Lee Tesser, Esq.
Southern District of NY ID# LT2090
TESSER & COHEN P.C.
946 Main Street
Hackensack, New Jersey 07601
(201) 343-1100
Attorneys for Plaintiff,
Unity Electric Co., Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITY ELECTRIC CO., INC., | Civil Action No.:  1:22-cv-01066 |
| Plaintiff, | **COMMPLAINT** |
| vs. | |
| MICRODESK, INC. | |
| Defendant. | |

Plaintiff, Unity Electric Co., Inc. ("Plaintiff") or ("Unity"), by way of Complaint against Defendant, Microdesk, Inc. ("Microdesk" or "Defendant"), alleges as follows:

### INTRODUCTION

1. This is an action alleging, in essence, breach of contract by Microdesk pursuant to two Contracts it had with Unity regarding the construction Project known as the Delta Airlines Concourse E, LaGuardia Airport, New York (the "Project").

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1332(a)(1).

1

3. The amount in controversy exceeds $75,000 and the parties retain business operations in differing States.

4. The Contracts between the Parties that are the subject of this dispute calls for any lawsuits arising out of the Contract to be held in the Southern District of New York, which is the jurisdiction where Defendants' performed their Contract work.

5. Plaintiff, Unity Electric Co., Inc., maintains its principal office in Flushing, NY.

6. Defendant, Microdesk, Inc. maintains its principal office in Nashua, NH.

## THE PARTIES

7. Plaintiff, Unity Electric Co., Inc., is a company engaged in the business of electrical construction and it is principally located at 65-45 Fresh Meadow Lane, Flushing, NY 11365.

8. Defendant, Microdesk, Inc., is a design consulting company that has its headquarters at 10 Tara Blvd., Suite 420, Nashua, NH 03062.  Microdesk also maintains an office at 5 Penn Plaza, 14th Floor, New York, NY 10001.

## FACTUAL BACKGROUND

9. On or about January 15, 2020, Unity and Microdesk entered into a Master Services Agreement for Microdesk to provide consulting services to Unity on various construction projects, including but not limited to the LaGuardia Airport Project mentioned above.

10. January 12, 2021 Unity and Microdesk entered into a second Master Services Agreement due to the fact that additional Microdesk manpower was needed to work on the Project.

11. The services specifically regarded design and electrical modelling services for the Project.  Such building modeling information is commonly referred to in the construction industry as "BIM".  Microdesk's scope of work included, but was not limited to, turning

Project specifications into BIM format, and matching Project drawings with field installation specifications and routing conduits to termination points.

12. Unfortunately, Microdesk's work did not meet the requirements of the Agreements and its work was contrary to industry standards any applicable standard of care.

13. By way of example, many of the drawings prepared and submitted by Microdesk during the course of the Project were defective and/or incomplete and Unity was forced to revise and change said drawings because said drawings were missing dimensions, labels, identifying information, or failed to include previously identified mark-ups.

14. In addition, certain aspects of the field work needed to be corrected because the drawings upon which the work was based, prepared by Microdesk, were defective.

15. Unity was also forced to hire another vendor to prepare "As Built" drawings and perform additional work that would not have been necessary but for Microdesk's failures. Unity has incurred direct out of pocket costs for this outside vendor.

16. Some of Microdesk's drawings, such as the Power Conduit drawings, were simply unusable. As a result, Unity was forced to assign a dedicated internal engineer to create separate power drawings that were workable and functional for Unity's field personnel.

17. Microdesk's drawings were so defective that Unity was forced to dedicate substantial additional man hours for field supervision to review submitted drawings, when those personnel should have been managing field labor or performing other tasks.

18. Unity's field labor had to make up lost time and address replacement or modification of work already installed as a direct result of Microdesk's failures.

19. Microdesk's poor performance was in direct conflict with one of the purposes and goals of retaining Microdesk – that being to increase the amount of prefabrication of basic

installed assemblies such as conduit racks. Unity was forced to fabricate a substantial amount of conduit racks in the field, instead of being able to prefabricate these items. This caused a significant overage of budgeted hours, delay to Unity's work, and diversion of Unity's resources to address Microdesk's failures.

20. The significant amount of missing scope in Microdesk's drawings also caused Unity's field personnel to lose considerable time while those faulty drawings were reviewed to find workable solutions.

21. Numerous conflicts with other trades were found <u>after</u> Microdesk had supposedly completed its coordination with those trades. The coordination process to be completed by Microdesk was aimed at avoiding this unwanted result.

22. All of this created substantial inefficiency on the Project because Unity was constantly being forced to find field solutions for Microdesk's faulty drawings.

23. As a result of Microdesk's failure to perform as required by the Agreements, its failure to provide competent staff, and its overall failure to live up to its own stated standards and any applicable industry standard of care, Unity suffered significant damages.

24. Those damages include but are not limited to
    a. costs incurred to correct unusable drawings and increased man hours for engineering and field personnel,
    b. additional and costly hours for engineering and field personnel to review the same drawings repeatedly due to Microdesk's failure to make necessary changes after mark-ups,
    c. costs incurred for Unity's engineers to correct Microdesk's drawings so they could be used for field installations.

    d. costs incurred for additional labor and overtime work by Unity to perform out of sequence work as a direct result of Microdesk's drawings missing crucial information that then had to be left out of sequenced work and completed later,

    e. and costs for drawings that were excessively late and resulting in more labor hours by Unity to complete work when the drawings were finally supplied.

25. In addition, Microdesk overcharged Unity significantly for the work it claims to have performed. For example, Unity was repeatedly charged for hours spent by Mircrodesk to repair its own mistakes and poor work product.

26. In sum, Microdesk failed to perform in accordance with its contractual obligations, causing significant damages to Unity.

27. At this time, Unity's damages are in excess of $3,000,000.

## COUNT ONE

### (Breach of Contract)

28. Unity repeats each of the above paragraphs as if set forth fully herein.

29. Unity and Microdesk entered into two Agreements wherein Microdesk agreed to perform services and provide certain goods for Unity's use on the subject Project.

30. Microdesk failed to perform its contractual obligations and as a result, Unity has been damages.

31. Microdesk overbilled Unity for work it allegedly performed, including overbilling for work Microdesk performed to correct its own work.

32. As a result of Microdesk's breach of the Agreements, Unity has been damaged.

**WHEREFORE,** Plaintiff, Unity Electric Co., Inc., demands judgment against Defendant, Microdesk, Inc., for compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT TWO

### (Delays)

33. Unity repeats each of the above paragraphs as if set forth fully herein.

34. Microdesk failed to submit its drawings and complete its work in a timely manner. Microdesk failed to meet its own timelines for production of drawings.

35. Microdesk failed to perform its work in the time required by the Agreements, in the time required of the Project and scheduling, and in accordance with deadlines put in place by Microdesk itself.

36. As a result, Unity was forced to increase its labor power on the Project and perform work out of sequence to address Microdesk's untimely work.

37. Microdesk's delays directly resulted in damages to Unity for its increased labor costs and efforts to mitigate the impact of Microdesk's delays.

38. In addition, Unity has a Prime Contract with Delta Airlines for its own scope of work on this Project. That Prime Contract includes a Liquidated Damages clause that may require Unity to compensate Delta Airlines for any delays on this Project that were caused by Microdesk.

39. If and to the extent Unity becomes liable for any liquidated damages as a result of Microdesk's delays, then Microdesk shall be responsible to indemnify Unity and

reimburse it for any liquidated or other damages Unity may sustain arising out of this Project.

**WHEREFORE,** Plaintiff, Unity Electric Co., Inc., demands judgment against Defendant, Microdesk, Inc., for compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

                                                                        Tesser & Cohen P.C.
*Counsel for Plaintiff*
*Unity Electric Co., Inc.*

Dated: February 8, 2022            By:_____
                                            Lee Tesser, Esq.
                                            Southern District of NY ID# LT2090
                                            946 Main Street
                                            Hackensack, NJ 07601
                                            Ph: 201-343-1100
                                            Email: ltesser@tessercohen.com

## **CERTIFICATION**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

                                                                  Tesser & Cohen P.C.
                                                                  *Counsel for Plaintiff*
                                                                  *Unity Electric Co., Inc.*

Dated: February 8, 2022            By:_____

Lee Tesser, Esq.
Southern District of NY ID# LT2090
946 Main Street
Hackensack, NJ 07601
Ph: 201-343-1100
Email: ltesser@tessercohen.com